# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| GERALD S. BODNAR,<br>    Plaintiff, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. H-09-2493 |
| | § | |
| IMPRESSION BRIDAL, INC.,<br>*et al.*,<br>    Defendants. | §<br>§<br>§<br>§ | |

## **MEMORANDUM AND ORDER**

This case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 36] filed by Defendants Impression Bridal, Inc. ("Impression"), Ashdon, Inc. ("Ashdon"), DaVinci Bridal, Inc. ("DaVinci"), EMME Bridal, Inc. ("Emme"), Nick Yeh, and Mike Yeh.[1]  Plaintiff Gerald S. Bodnar filed a Response [Doc. # 37] in opposition to the Motion, Defendants filed a Reply [Doc. # 41], and Plaintiff filed a "Surrebuttal" [Doc. # 45].  Having reviewed the record and applied governing legal authorities, the Court **grants** the Motion except as to the claim that Plaintiff was improperly charged $2,450.00 for secretarial services.

---

[1]   The uncontroverted evidence in the record establishes that Defendants DaVinci and Impression are not existing legal entities.  DaVinci is a brand owned by Emme, and Impression is the predecessor of Ashdon.  Because they are not legal entities, all claims against DaVinci and Impression are dismissed.

## I.  BACKGROUND

Ashdon and Emme design and market wedding apparel.  Nick Yeh is the president and majority shareholder of Ashdon, and Mike Yeh is the president and majority shareholder of Emme.  In May 2007, Bodnar entered into an agreement with Ashdon and Emme to serve for an undefined term as an independent sales representative for the two companies in a designated sales territory comprised of Michigan, Ohio, Indiana, and Wisconsin.  Bodnar was to start earning commissions on August 15, 2007, which is the beginning of the Spring sales season.  The written agreement, memorialized in an email dated May 23, 2007, provided that Bodnar would receive a $1,500.00 draw which would be deducted from his commissions.  *See* May 23, 2007 Email, Exh. 2 to Declaration of Mike Yeh [Exh. A to Motion].  The written agreement provided that Bodnar would earn an 8% commission minus any customer discounts, and any returns would be deducted from the commissions.  *See id.*

Bodnar's performance did not satisfy Ashdon and Emme, and he was fired on October 10, 2007.  Bodnar requested another chance and it was agreed that he could continue as a sales representative for Ashdon and Emme under new and additional terms and conditions.  For example, Bodnar's draw against commissions would be reduced, and his sales appointments would be scheduled by employees of Ashdon and

Emme. These new terms were not reduced to writing, but it is undisputed that the commission percentage was to be reduced and the appointments would be scheduled by Ashdon and Emme.[2]

Bodnar's performance remained unsatisfactory to Ashdon and Emme, and he was again fired in November 2007.

Bodnar filed this lawsuit in Ohio state court, the case was removed to Ohio federal court, and then was transferred to this Court. Plaintiff alleges that Defendants breached their contract with him, fraudulently failed to pay his commissions, and failed to provide an accurate accounting. After the completion of discovery, Defendants filed their Motion for Summary Judgment, which has been fully briefed and is ripe for decision.

## II.  STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v.*

---

[2] It is uncontested that a genuine issue of material fact exists regarding whether Bodnar agreed to reimburse Ashdon and Emme for the expenses associated with scheduling his sales appointments and whether $2,450.00 in secretarial expenses was incurred on his behalf.

*Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

The initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific evidence showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could

affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).   Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

## III.  ANALYSIS

Plaintiff's Complaint [Doc. # 2] contains ten sections, each identified as a separate "Cause of Action." In the first seven sections, Plaintiff complains that the accounting provided by Defendants in connection with the payment of his commissions was incorrect. In the sixth and seventh sections, Plaintiff includes an allegation that he was improperly charged for unauthorized items. The eighth section is a breach of contract claim, the ninth section alleges that Defendants fraudulently

withheld commissions, and the tenth section alleges that Defendants fraudulently withheld information regarding his commissions.

### A.   Commissions and Supporting Accounting

Plaintiff complains that he was not paid all the commissions he earned, and he seeks an accounting of Defendants' records to support his complaint. With respect to the request for an accounting, Defendants have offered to make their records available to an accountant selected by Plaintiff, but Plaintiff has not taken advantage of Defendants' offer.

With respect to the commissions earned while working for Defendants, it is undisputed that there was an error in the amount of $4,456.76 caused by $2,228.38 being subtracted from the calculation of Plaintiff's commissions rather than added into that calculation. Immediately upon discovering the error, however, Defendants paid Plaintiff the $4,456.76, plus interest, for a total payment of $4,716.74.

Defendants have submitted the expert report of Certified Public Accountant Gilbert Schorre, who has examined Defendants' records and determined that Plaintiff is not due additional commissions. Plaintiff has produced no expert evidence to the contrary. Instead, Plaintiff asserts that he does not trust Defendants' records, but has presented no evidence to cast suspicion on the accuracy of those records and has not filed a motion to exclude the evidence provided by Defendants' expert.

Plaintiff also argues that he is entitled to recover the amount of commissions he would have earned if he had not been fired and had, instead, continued working for Defendants. Plaintiff provides no legal basis for an award of commissions beyond the amount provided for in the written agreement. Any claim that there will be future sales – and resulting commissions – is speculative at best.

Plaintiff has failed to present evidence to support his claim that he is entitled to additional commissions. Defendants have offered to allow Plaintiff to conduct the accounting he requested, so there has been no violation of any right Plaintiff may have to an accounting. As a result, Defendants are entitled to summary judgment on Plaintiff's claims relating to the amount of commissions and an accounting.

### B.  **Unauthorized Charges**

In claims 6 and 7, Plaintiff alleges that Defendants deducted unauthorized charges from his commissions. With reference to the $500 described in claim 6, it is uncontroverted that the standard industry practice when a sales representative relationship is terminated is to deduct an amount for future uncollectible invoices on which commissions have already been paid and which would have been deducted from the amount of commissions had the relationship continued. In this case, the undisputed evidence shows that the uncollectible invoices would have resulted in a charge to Plaintiff of $936.24, more than the $500.00 he was charged.

In claim 7, Plaintiff complains that he was charged for secretarial services. Defendants maintain that they were entitled to charge Plaintiff for the expenses, including secretarial services, incurred in scheduling sales appointments for him and that those expenses totalled $2,450.00. Defendants concede, however, that there is a genuine issue of material fact regarding whether they were entitled to charge these expenses to Plaintiff and whether $2,450.00 is the correct amount.

C. **Breach of Contract Claim**

The parties agree that Plaintiff worked for Defendants as an independent contractor. The written agreement contains no specific term for its duration, and language in the agreement shows that the parties contemplated that either party could terminate the relationship at any time. Specifically, the written agreement provides that if either party decides "to end our relationship, [Plaintiff] will earn commission until the start of the next salesman road trip." *See* May 23, 2007 Email, Exh. 2 to Declaration of Mike Yeh [Exh. A to Motion]. Consequently, the unambiguous agreement evidences an intent for the sales representative relationship to be terminable by either party at either time, and Defendants' decision to terminate the relationship in November 2007 was not a breach of the parties' contract.

Plaintiff argues that his payment of $5,058.00 as his percentage of the national show expenses altered the written agreement's provision regarding termination of the

sales representative relationship. Plaintiff was obligated under the written agreement, however, to pay ten percent (10%) of the expenses for the shows. *See* May 23, 2007 Email, Exh. 2 to Declaration of Mike Yeh [Exh. A to Motion]. As a result, Plaintiff's payment of these expenses, as required by the written agreement, does not impose additional restrictions or requirements on Defendants and, thus, Defendants' termination of the sales representative agreement with Plaintiff was not a breach of contract.

Plaintiff has failed to present evidence to raise a genuine issue of material fact in support of his breach of contract claim and, as a result, Defendants are entitled to summary judgment on this claim.

### D. Fraud Claims

Plaintiff alleges that Defendants fraudulently withheld commissions (claim 9) and fraudulently withheld information regarding his commissions (claim 10).[3] Texas law does not recognize these claims as independent fraud claims. Where the plaintiff alleges that the parties have "contractual obligations to one another, the Texas Supreme Court has established a two-part test to determine whether a plaintiff may assert a tort claim alongside a breach of contract claim." *See Coachmen Indus., Inc.*

---

[3] In his Response [Doc. # 37], Plaintiff clarifies that he is asserting a fraud claim against Defendant Mike Yeh only.

*v. Willis of Illinois, Inc.*, 565 F. Supp. 2d 755, 771 (S.D. Tex. 2008) (citing *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex. 1992)). First, the court "must first look to whether the defendant's conduct 'would give rise to liability independent of the fact that a contract exists between the parties.'" *Id.* at 772 (quoting *DeLanney*, 809 S.W.2d at 494). "If the action depends entirely on pleading and proving the contract in order to establish a duty, the action remains one for breach of contract only, regardless of how it is framed by the pleadings." *Id.* (quoting *OXY USA, Inc. v. Cook*, 127 S.W.3d 16, 20 (Tex. App. – Tyler 2003, pet. denied)). In this case, Defendants' duty to pay Plaintiff commissions and to provide him with information regarding those commissions was only a contractual duty.

Next, the court looks to the nature of the injury. *Id.* (citing *DeLanney*, 809 S.W.2d at 495). "When the injury is only the economic loss to the subject of a contract itself[,] the action sounds in contract alone." *DeLanney*, 809 S.W.2d at 495. Therefore, in order for there to be a claim for fraudulent or negligent breach of contract, the defendant's liability must arise "independent of the fact that a contract exists between the parties." *Willcox v. Amer. Home Assurance Co.*, 900 F. Supp. 850, 863 (S.D. Tex. 1995) (quotations and citations omitted). In this case, Plaintiff claims he was injured by Defendants' failure to pay him the full amount of commissions he

earned while working for them. This is the same injury he alleges resulted from the breach of contract and, therefore, there is no independent fraud claim under Texas law.

Additionally, Plaintiff testified clearly and unequivocally in his deposition that he did not believe Defendants were trying to cheat him or lie to him, but that they had made an honest and innocent mistake in calculating his commissions. *See* Deposition of Gerald Bodnar, Exh. C to Motion, pp. 51-57. This testimony refutes Plaintiff's allegation that Mike Yeh fraudulently withheld commissions. Plaintiff in his Response submits his own Affidavit in an attempt to change his deposition testimony because it was "given at a time when he did not fully understand his case." *See* Response, p. 9. "[I]t is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)); *accord Doe v. Dallas Independent School District*, 220 F.3d 380, 385-87 (5th Cir. 2000); *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002).

Plaintiff's allegations do not support independent fraud claims under Texas law. Additionally, Plaintiff's deposition testimony refutes his allegations of fraud. As a result, Defendants are entitled to summary judgment on Plaintiff's fraud claims.

### E. Texas Sales Representative Statute

In his Response, Plaintiff discusses the Texas Sales Representative statute, TEX. BUS. & COM. CODE §§ 54.001-54.006. Plaintiff did not at any time prior to filing his Response assert a claim under this Texas statute. He argues that he filed this lawsuit in Ohio and, therefore, could not have been expected to assert a claim based on Texas law. The case was transferred here on August 4, 2009. In the Docket Control Order [Doc. # 31] entered August 31, 2009, the Court – with input from the parties – established a September 24, 2009, deadline for amendments to pleadings. Plaintiff had almost two months in which to seek leave to amend his complaint to add any new claims under Texas law, but he failed to do so. Plaintiff has not asserted a claim under the Texas Sales Representative statute and the time to do so has expired.

## IV.   CONCLUSION AND ORDER

Except for the claim that he was improperly charged $2,450.00 for secretarial services, Plaintiff has failed to present evidence that raises a genuine issue of material fact in support of his claims. To the extent Plaintiff seeks an accounting in connection with the amount of commissions he earned while working for Defendants, Plaintiff has been presented with the report of Defendants' expert and was offered a full opportunity to have an accounting performed by an accountant of his choosing. There has been no breach of any duty to allow an accounting. Texas law does not recognize an independent fraud claim for a "fraudulent breach of contract" and, in any event,

Plaintiff's deposition testimony refutes his allegations of fraud by Defendants. Plaintiff has not asserted a claim under the Texas Sales Representative statute. Accordingly, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 36] is **GRANTED** except as to the claim that Plaintiff was incorrectly charged $2,450.00 for secretarial services.

The case remains scheduled for docket call on **February 24, 2010**.

SIGNED at Houston, Texas, this **22nd** day of **January, 2010**.

_____
Nancy F. Atlas
United States District Judge